Clerk's Office U.S. Dist. Court
At Lynchburg, VA
FILED

OCT 24 2008

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| RMA LUMBER, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> PIONEER MACHINERY, LLC, ET AL., <br><br> *Defendants.* | CIVIL ACTION NO. 6:08-CV-00023 <br><br> <u>MEMORANDUM OPINION</u> <br><br> JUDGE NORMAN K. MOON |

RMA Lumber, Inc. ("RMA" or "Plaintiff") filed this action in the Circuit Court of Buckingham County, Virginia against Defendants Pioneer Machinery, LLC ("Pioneer") and Peterson Pacific Corp ("Peterson"), alleging the following: Count I, actual fraud, against Pioneer; Count II, constructive fraud, against Pioneer; Count III, breach of Implied Warranty of Merchantability, against Pioneer and Peterson; and Count IV, breach of implied warranty of fitness for a particular purpose, against Pioneer.[1] The action was removed to this Court under 28 U.S.C. §§ 1441(a) and 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000. The matter is now before the Court upon consideration of Defendants' Motion to Dismiss (docket no. 3) pursuant to Federal Rule of Civil Procedure 12(b)(6), the ensuing responses and replies, and the parties' arguments presented by counsel at a hearing on October 10, 2008. For the reasons stated herein, I will deny the Motion.

---

[1] The Complaint included a fifth count, seeking punitive damages. This count was erroneously styled as "Count IV."

## I. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See id.*, at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001). The plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1965 (2007). "[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244. A complaint may not be dismissed if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at ___, 127 S. Ct. at 1974.

## II. PLAINTIFF'S FACTUAL ALLEGATIONS

On June 6, 2006, Plaintiff purchased a Peterson HC 6700B Grinder, S/N 31B-54-1305 (the "Grinder"). The Grinder is manufactured by one of the two co-defendants, Peterson, and Plaintiff purchased it from the other co-defendant, Pioneer, through Pioneer's office in Glen Allen, Virginia. No written contract for the purchase and sale of the subject equipment (the "Equipment") was ever signed by Pioneer.

In detailed conversations prior to purchasing the Grinder, RMA informed Pioneer of the particular purposes for which the Equipment would be used and the specific intensity of such uses. Pioneer had sold grinders to RMA in the past, and Pioneer's salesmen had been at RMA

work sites numerous times in the past. Pioneer was very familiar with RMA's operations and the uses to which it would put the Equipment. RMA relied on Pioneer's skill and judgment to select or furnish goods suitable for RMA's purposes. The uses to which RMA intended to put and did put the Equipment were within scope of the purposes it disclosed to Pioneer and were within the ordinary purposes for which such goods are used. At the time of the sale of the Equipment to RMA, Pioneer and Peterson were merchants with respect to goods of the kind represented by the Equipment.

On or about June 6, 2006, Pioneer expressly represented to RMA that the Equipment was capable of meeting RMA's specific needs, of which Pioneer had been made aware by RMA, and stated to RMA that the Equipment operated at (i) as high a capacity and speed as any other grinder on the market and (ii) significantly higher than the Model 5400 Peterson grinder RMA had been using; that the Grinder would easily handle the material and volume RMA told them it needed to process; that it was designed to operate with an 8 inch screen; and that it operated at a high level of efficiency and reliability. Pioneer further represented that the Equipment would grind as fast as, handle as large a size of material as, and produce a higher quality product than the "Diamond Z" tub grinder.

At the time Pioneer made these representations, it knew them to be false. Pioneer was aware of the following: because of a design defect in the Equipment, the Equipment would malfunction and be unable to handle the volume and rate of processing of material needed by RMA; the Equipment would not operate at as a high a capacity and speed as any other grinder on the market; the Equipment would not operate at a significantly higher capacity than the Model 5400 Peterson grinder RMA had been using; the Equipment would not operate with an 8 inch screen; and the Equipment would not operate at a high level of efficiency and reliability.

The deficiencies in the Equipment included a design defect in the discharge conveyor motor. Pioneer not only knew of the defect in the Equipment, it had been notified by Peterson of the defect and had been provided by Peterson with a kit to retrofit the Equipment in such a manner as to cure the defect. Pioneer failed to install the retrofit prior to selling the Equipment to RMA. Nor did it notify RMA that a retrofit was needed.

On June 15, 2006, immediately after RMA began to use the Equipment, the Equipment malfunctioned. Attempting to resolve the malfunction, RMA notified Pioneer of the problem repeatedly, beginning on June 15, 2006, yet the malfunction continued. Upon reviewing the situation, Pioneer informed RMA that the problem was due to operator error, even though Pioneer knew this to be false, and knew that the problem causing the malfunctioning was a design defect. RMA continued to attempt to use the Equipment until September 2007, even though it continued to repeatedly malfunction. As a result of this repeated malfunctioning, the Equipment operated so slowly that RMA lost many of its contracts and contractual expectancies. After 67 weeks of continuous malfunctioning, Pioneer finally retrofitted the small discharge conveyor motor on the Equipment with a larger motor. The retrofit should have taken only two days to complete, but Pioneer took six weeks, ultimately completing the retrofit on October 15, 2007. Since the retrofit, the Equipment appears to be working properly.

RMA claims that, as a direct and proximate result of the defective condition of the Equipment, it has been damaged in the amount of no less than $1,691,853.45.

## III. DISCUSSION

### A. The Fraud Claims Do Not Fail As a Matter of Law

*1. The Alleged Misrepresentations Concerned Present Facts*

Defendants contend that Plaintiff's claims for fraud fail as a matter of law because the alleged misrepresentations concern future performance, not present facts, and that, in general, an action based on fraud must aver the misrepresentation of present pre-existing facts, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. Plaintiff counters that the allegations hinge on the present facts of (i) Pioneer's alleged knowledge of the design defect at the time of sale, including Pioneer's failure to acknowledge the existence of the retrofit kit, and Pioneer's knowledge that the Equipment would malfunction without the retrofit and would not perform as promised; and (ii) Pioneer's long-continuing misrepresentation that the malfunction was due to operator error, rather than the need for the retrofit. Plaintiff maintains that Pioneer's specific misrepresentations concerning the capability and suitability of the Equipment for Plaintiff's purposes, of which Pioneer had detailed knowledge, constitute allegations of present fact, made before the contract was entered into, to induce the Plaintiff to enter the contract.[2] Plaintiff adds that, at the pre-contractual point of inducement, the misrepresentations were not terms of any contract.

The Supreme Court of Virginia has held that claims of "[f]raud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as

---

[2] In the alternative, Plaintiff contends that, even were the Court to accept Pioneer's characterizations of the representations as promises of future performance, the misrepresentations were made with the present intention not to perform them, given the following: Pioneer's knowledge of the defect and how to cure the defect; its knowledge that the defect would prevent the Equipment from performing as promised; its knowledge that it would not cure the defect before the sale; its actual failure to cure the defect before the sale; and its failure to cure the defect for a long time after the sale.

Case 6:08-cv-00023-NKM-mfu   Document 24   Filed 10/24/08   Page 5 of 18   Pageid#: 152

to future events." *McMillion v. Dryvit Systems*, 262 Va. 463, 471 (2001) (citations omitted) (determining, *id.* at 472, that statements in an advertising brochure were merely opinions about how the defendant's product might work, not misrepresentations of present facts, and trial court thus did not err in sustaining defendant's demurrer). However, there are "'some real and apparent exceptions'" to the general "proposition that 'an action based upon fraud must aver the misrepresentation of present [or] pre-existing facts, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events.'" *Sea-Land Service, Inc. v. O'Neal*, 224 Va. 343, 351(1982) (quoting *Lloyd v. Smith*, 150 Va. 132, 145 (1928)).

> [F]raud may sometimes be predicated on promises which are made with a present intention not to perform them, or on promises made without any intention to perform them . . . . It has been stated that the gist of fraud in such case is not the breach of the agreement to perform, but the fraudulent intent.

*Id.* (quoting *Lloyd*, 150 Va. at 145, and citing *Restatement (Second) of Torts* § 530 comment c (1977)); *see also Tate v. Colony House Builders, Inc.*, 257 Va. 78, 83-84 (1999) ("representations of the present quality or character of the property [a new dwelling house that had been assured to be free from structural defects, constructed in a workmanlike manner, and fit for habitation] . . . are statements of fact and not mere expressions of opinion"); *Elliott v. Shore Stop, Inc.*, 238 Va. 237, 245 (1989) (the defendant's "promise was a misrepresentation of a present fact, and if made to induce [plaintiff] to act to her detriment, is actionable as an actual fraud"); *Boykin v. Hermitage Realty*, 234 Va. 26, 30 (1987) (plaintiffs expressly informed defendant that they were especially concerned about the privacy of certain property in which they were interested; defendant's "promises of privacy made in reply to express inquiries" were unambiguous, responsive, unconditional, and reinforced by a map displayed on the wall of the agent's office; however, when the representations were made, the defendant was aware that a

Case 6:08-cv-00023-NKM-mfu   Document 24   Filed 10/24/08   Page 6 of 18   Pageid#: 153

wooded area near the property the plaintiffs were interested in was actually slated to for development; and this was enough to state actual fraud).

If the statements were false when made, as Plaintiff alleges, and were made in order to induce reliance, then the fraud claim does not fail as a matter of law. *See Lloyd*, 150 Va. at 145; *Colonial Ford Truck Sales, Inc. v. Schneider*, 228 Va. 671, 677 (1985) (a statement "made to induce the promisee to act to his detriment . . . is actionable as an actual fraud"); *see also Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988). Fraud may occur when one party conceals or willfully fails to disclose a material fact from another; the rationale for this is that such nondisclosure "may evince an intent to practice actual fraud." *Spence v. Griffin*, 236 Va. 21, 28 (1988) (citations omitted). Additionally, "a false misrepresentation of a material fact, constituting an inducement to the contract" is actionable as fraud in the inducement of a contract.[3] *George Robberecht Seafood, Inc. v. Maitland Bros. Co., Inc.*, 220 Va. 109, 111-12 (1979) (quotation omitted); *see also Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 204 (2007).

The representations Pioneer made are not promises to undertake certain actions in the future, as asserted by Pioneer, but were representations of present fact, allegedly false when made, relating to the features and capabilities of the Equipment. A representation that "the Equipment [as it then existed, without needed and available retrofits,] operate[s] at as high a capacity and speed as any other grinder on the market and significantly higher than the Model 5400 Peterson grinder RMA ha[s] been using" is not a prediction of the future or a promise to

---

[3] Under Virginia law, "a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty." *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558 (1998). However, the duty breached must be a common law duty, not one that exists between the parties solely because of the contract. *Id.* Therefore, for example, a claim for fraud in the inducement of a contract is not barred in a breach of contract action when a plaintiff can show that the defendant entered into the contract never intending to abide by its terms. *Id.* at 559-60.

-7-

Case 6:08-cv-00023-NKM-mfu   Document 24   Filed 10/24/08   Page 7 of 18   Pageid#: 154

perform in the future. It does not depend on future events and is not hypothetical. Insofar as the sufficiency of Plaintiff's allegations is concerned, Pioneer's representations constituted a statement of the present physical capacity of the Equipment, of which Pioneer purported to have knowledge, and its suitability as a replacement for the Peterson grinder Plaintiff already owned at the time of the representations. Similarly, a representation "that [the Equipment, without needed and available retrofits,] would easily handle the material and volume RMA told Pioneer it needed to process," is a statement of the present capacity of the Equipment, not dependent on future events. The same is true for the representations "that [the Equipment, without the retrofit kit,] was designed to operate with an 8 inch screen" and that it "would grind as fast as, handle as large a size of material as and produce a higher quality product than the 'Diamond Z' tub grinder." Each of these representations, as alleged, relate specifically to the present features and capacities of the Equipment, and Plaintiff alleges that they were false when made because Pioneer knew of the need for (and the availability of) the retrofit kit, which Pioneer did not disclose.

Defendants describe *Wal-Mart Stores, Inc. v. J.A. Fielden Co., Inc.*, 440 F. Supp. 2d 523 (W.D. Va. 2006) as "instructive." Defendants summarize *Wal-Mart Stores* as follows:

> Wal-Mart sued various contractors and engineering firms for breach of contract, breach of warranty and fraud when it discovered that those parties had misjudged the suitability of a particular parcel of real property for building a parking lot adjacent to a Wal-Mart store. The court dismissed Wal-Mart's fraud claim on the grounds that the defendant's statements about the suitability of the parcel and their ability to build the parking lot were "predicated on future events." The court determined that "Wal-MMart's claim for constructive fraud [was] essentially a restatement of its contract claim." *Id.*, at 529.

The facts of *Wal-Mart Stores* are distinguishable from the facts of the instant case. The Supreme Court of Virginia observed in *McMillion*, 262 Va. at 471 (quoting *Mortarino v.*

-8-

*Consultant Eng'g Servs.*, Inc., 251 Va. 289, 293 (1996)), that there is no "'bright line test to ascertain whether false representations constitute matters of opinion or statements of fact.'" "Instead, 'each case must in a large measure be adjudged upon its own facts, taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances.'" *Id.* (quoting *Packard Norfolk, Inc. v. Miller*, 198 Va. 557, 562 (1956)). In *Wal-Mart Stores*, Wal-Mart alleged, *inter alia*,

> that the defendants knew or should have known of the lack of truth in the statements that they made regarding: (1) the feasibility of building the parking lot in Bonsack, Virginia on the current site; (2) the adequacy of the plans to prevent soil movement; (3) the soil treatments necessary; and (4) the quality of the fill soils used to construct the slopes.

440 F. Supp. 2d at 528. The issue in *Wal-Mart Stores* was "whether these statements are such that they could have been false when made." *Id.* The Court determined that Wal-Mart's allegation "that the defendants 'misrepresent[ed] to Wal-Mart that the parking lot *could* be built in Bonsack, Virginia on the current site'" was "a statement regarding a future event." *Id.* at 529 (citations omitted). The Court added that it was "clear that the defendants intended this statement only as one of opinion, not fact," given the context of the alleged misrepresentation, which included statements indicating "that the parking lot had not yet been built, and that soil treatments would need to be performed and fill soils utilized prior to the satisfactory completion of the lot." *Id.* The Court observed that, "[a]s a practical matter, there were simply too many variables and subsequent conditional occurrences required to render the statement regarding the feasibility of building the lot on the current site a factual one." *Id.* (citing *Tate*, 257 Va. at 83-84). In other words, the Court in *Wal-Mart Stores* determined that the facts of that case indicated that, owing to "variables and conditional occurrences," *id.*, the defendants could not

Case 6:08-cv-00023-NKM-mfu    Document 24    Filed 10/24/08    Page 9 of 18    Pageid#: 156

have known the representations were untrue when made. In the case *sub judice*, however, Plaintiff alleges that Pioneer made specific factual representations regarding the capability of the Grinder to replace the Peterson equipment Plaintiff already owned, and that Pioneer knew these representations were false when they were made because Pioneer had great familiarity with Plaintiff's operations, and Pioneer knew of the need for and availability of the retrofit kit, which it failed to disclose. Thus, Plaintiff's factual allegations of constructive and actual fraud are based upon Pioneer's statements of present fact, and are sufficient to survive the Motion to Dismiss.

Accordingly, Defendants' Motion to Dismiss Plaintiff's fraud claims on the ground that the alleged misstatements concern future performance, not present facts, will be denied.

*2. The Alleged Misrepresentations Constitute Statements of Fact, Not Mere "Puffery"*

Defendants contend that the alleged misrepresentations are not actionable as fraud because they were statements of opinion, *i.e.*, mere "puffery." The Supreme Court of Virginia has observed that

> it is well settled that a misrepresentation, the falsity of which will afford ground for an action for damages, must be of an existing fact, and not the mere expression of an opinion. The mere expression of an opinion, however strong and positive the language may be, is no fraud.

*Lambert v. Downtown Garage, Inc.*, 262 Va. 707, 712 (2001) (quoting *Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 110-11 (2001)). It is clear that "[c]ommendatory statements, trade talk, or puffing, do not constitute fraud because statements of this nature are generally regarded as mere expressions of opinion which cannot rightfully be relied upon, at least where the parties deal on equal terms." *Id.* at 713 (quoting *Tate*, 257 Va. at 84). Here, however, the Court has already determined that the representations Pioneer put forth were factual assertions

made with specific knowledge of Plaintiff's particular circumstances; therefore, the alleged misrepresentations cannot seriously be regarded as mere opinions or "puffery." "[R]epresentations of the present quality or character of the [Equipment] . . . are statements of fact and not mere expressions of opinion." *Tate*, 257 Va. at 84. Furthermore, the failure to disclose the need for and the availability of the retrofit kit "may evince an intent to practice actual fraud." *Spence*, 236 Va. at 28. The question of whether the Equipment without the needed retrofit was actually capable as represented can be determined factually. Accordingly, Defendants' Motion to Dismiss Plaintiff's fraud claims on the ground that the alleged misstatements constitute mere "puffery" will be denied.

### 3. *Plaintiff Has Pleaded Fraud with Sufficient Specificity*

Defendants contend that Plaintiff has not pleaded fraud with the requisite specificity. However, the Complaint alleges specific dates of the representations, the specific content of the representations, and that the representations were made by Pioneer.

Where fraud is alleged, "the circumstances constituting fraud or mistake shall be pled with particularity." Fed. R. Civ. P. 9(b). In particular, the complaint must "specifically allege the time, place and nature of the fraud." *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 980 (4th Cir. 1990). Under Virginia law, "'[w]here fraud is relied on, the [pleading] must show specifically in what the fraud consists, so that the defendant may have the opportunity of shaping his defence [sic] accordingly, and since [fraud] must be clearly proved it must be distinctly stated.'" *Mortarino*, 251 Va. at 295 (citations omitted).

The only specificity lacking in Plaintiff's Complaint is the proper name of the person who allegedly made the misrepresentations, and this is not a critical defect in this case, because Defendants were provided with sufficient notice as to who among their employees and agents

may have made the statements, and enough information to understand the claim and frame a defense. Under Virginia law, the Complaint is not lacking in specificity as to "what the fraud consists," and Defendants were provided enough specifics to "have the opportunity of shaping" their defense. *Id.* Plaintiff has pled with particularity the time, place, and contents of the representations; the failure to specifically identify in the Complaint the name of the person who made the alleged misrepresentations is not fatal. Although the specific "identities of the agents, officers, and employees of [Pioneer] who are alleged to have perpetrated the fraud are not revealed" in the Complaint, it provides sufficient "details of the time and place where the fraudulent acts occurred," and the allegations are not "too vague, indefinite, and conclusory to state a cause of action." *Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 858 (1978).

Moreover, at this early stage in a case, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999). Thus, for the same reasons that dismissal is not appropriate under Virginia law, dismissal under Rule 9(b) for failure to plead fraud with specificity is inappropriate here.[4] In fact, the appropriate step would have been for Defendants to move for a more definite statement under Rule 12(e); however, it is clear enough why Defendants did not seek a more definite statement, given that arguments at the hearing on

---

[4] Furthermore, while it is clear that, under Rule 9(b) and Virginia law, a fraud complaint must allege with particularity a false representation of material fact made by a defendant with the intent to mislead, and reasonable reliance on that representation by a plaintiff to its detriment, a court must balance the rules regarding the pleading of fraud with the relaxed Rule 8(a)(2) "short and plain statement" requirement, and decide whether, given the nature and facts of the case and circumstances of the parties, the pleading in question is sufficiently particular to give a defendant notice. *Kline v. Nationsbank of Va., N.A.*, 886 F. Supp. 1285, 1295-96 (E.D. Va. 1995).

October 10, 2008, revealed that the name of Pioneer's employee who made the alleged misrepresentations has been disclosed by Plaintiff in discovery pursuant to Rule 26(a).

Accordingly, Defendants' Motion to Dismiss on the ground that Plaintiff has not pled fraud with the required specificity will be denied.

## B. The Requested Relief Can Be Granted Under the Allegations in the Complaint

### 1. Consequential Damages Are Recoverable

Defendants contend that the consequential damages sought in the Complaint are not recoverable in an action for breach of warranty. In Defendants' view, this is a "simple sales transaction," insufficient "to create the sort of contractual relationship required for recovery of consequential damages." Defendants argue that both the common law and the Uniform Commercial Code ("UCC"), as codified in Virginia law, provide that lost profits are recoverable only if such losses are contemplated by the parties at the time the contract was negotiated. Plaintiff counters that the UCC and Virginia cases interpreting it support its claim for consequential damages.[5] Moreover, Plaintiff adds, the transaction in this case does not involve "a simple purchase of goods off the shelf," given the detailed conversations Plaintiff and Pioneer had concerning the propriety of the Equipment for Plaintiff's uses, Pioneer's familiarity with Plaintiff's operations, and Pioneer's specific representations regarding the Equipment and its capacity.

---

[5] Defendants assert that "[t]he allegations in RMA's Complaint establish that there was no contract between RMA and Pioneer." In support of this, Defendants cite to paragraph 8 of the Complaint, which states, in its entirety: "No written contract for the purchase and sale of the Equipment was ever signed by Pioneer." Plaintiff counters that oral contracts exist in cases involving breaches of implied warranties. The factual allegation in the Complaint that Pioneer never signed a written contract in no way establishes "that there was no contract between RMA and Pioneer."

Code of Virginia § 8.2-715, "**Buyer's incidental and consequential damages,**" provides, in pertinent part:

> (2) Consequential damages resulting from the seller's breach include
>
> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>
> (b) injury to person or property proximately resulting from any breach of warranty.

Defendants cite *Beard Plumbing and Heating, Inc. v. Thompson Plastics, Inc., et al.*, 254 Va. 240 (1997), regarding the collection of consequential damages in cases involving the sale of goods. *Beard* was certified to the Supreme Court of Virginia from the United States Court of Appeals for the Fourth Circuit; the certified question asked whether privity of contract is "required to recover economic loss under Va. Code § 8.2-715(2) due to the breach of the implied warranty of merchantability." *Id.* at 244. The Supreme Court of Virginia answered the certified question in the affirmative "because § 8.2-715(2)(a) requires a contract between the parties for recovery of consequential economic loss damages in a claim for breach of the implied warranty of merchantability. . . ." 254 Va. at 246.

Defendants point to the statement in *Beard* that "[Plaintiff's] interpretation would require substituting the word 'sale' for the word 'contracting,' and we decline the invitation to rewrite the statute." *Id* at 245. According to Defendants' Motion to Dismiss, this statement means that "a simple sales transaction is not sufficient to create the sort of contractual relationship required for recovery of consequential damages." The instant case, however, is distinguishable from *Beard*. "There was no contract between the manufacturers and" the plaintiff in *Beard*, because the plaintiff purchased the goods at issue from downstream, "third-party suppliers." *Id.* at 242.

-14-

In the first instance, the factual allegations suggest that this was no "simple sales transaction"; in fact, the Complaint alleges that Plaintiff "informed Pioneer of the particular purposes for which the Equipment would be used and the specific intensity of such uses" and that "Pioneer was very familiar with RMA's operations and the uses to which it would put the Equipment, having sold RMA grinders in the past and Pioneer's salesmen having been at RMA work sites numerous times in the past." Moreover, the factual allegations in this case are sufficient to suggest that there was a contract, and if there was a contract, then privity certainly existed between Plaintiff and Pioneer, and in this case consequential damages are recoverable for breach of warranty.[6] Plaintiff's factual allegations survive the Motion to Dismiss.

## 2. Interest Costs May Be Recoverable

Plaintiff seeks to recover, *inter alia*, the "financing costs and interest on funds borrowed for Equipment purchase." Defendants contend that Plaintiff cannot recover financing costs of equipment that it still owns.[7] In Defendants' view, the costs of financing are not in any way attributable to Defendant, Plaintiff would have had to finance the Equipment under any circumstances, and Plaintiff "has retained the benefit of its bargain" because it now has a properly functioning Grinder. Thus, Defendants contend, the financing costs are not recoverable

---

[6] Toward the end of the hearing on October 10, 2008, Defendants attempted to submit documents outside the pleadings in order to raise a factual dispute regarding the dates when the misrepresentations may have been made. Plaintiff's counsel assured the Court that the discrepancies in dates were due to scrivener's errors, and a perfunctory review of the documents indicates that the documents themselves contain a number of inconsistencies as to dates, *e.g.*, an "EQUIPMENT ORDER FORM AND CONTRACT OF SALE" is dated May 23, 2006, but indicates a shipping date of May 5, 2006. The Court is not considering these documents, and therefore the Motion to Dismiss is not converted to one seeking summary judgment. Whether or not a contract existed between the parties cannot be determined on the present record, and because the parties have not had an opportunity to develop the facts, I will not exercise my discretion to convert the present motion to a motion for summary judgment. *See Canal Ins. Co. v. Lebanon Ins. Agency, Inc.*, 504 F. Supp. 2d 113, 117 n. 4 (W.D. Va. 2007) (citing *Rubert-Torres ex rel. Cintron-Rubert v. Hosp. San Pablo, Inc.*, 205 F.3d 472, 475 (1st Cir. 2000). However, the Court observes that a number of Defendants' documents suggest that the sale at issue was, in fact, contractual.

[7] Statements at the hearing, however, indicate that the Equipment has been repossessed.

-15-

for breach of warranty. Countering, Plaintiff cites *Roanoke Hospital v. Doyle and Russell*, 215 Va. 796, 802 (1975), which held that "extended financing costs are direct damages. . . . The interest costs incurred and the interest revenue lost during . . . an extended term are predictable results of [delays attributable to nonperforming defendant] and are, therefore, compensable direct damages." If, in fact, it turns out that Plaintiff has incurred additional financing costs as a result of Defendants' failure to disclose material defects in the Equipment, then those costs may be recoverable under *Roanoke Hospital*.[8] Accepting as true the allegations in the Complaint, and drawing all reasonable inferences in favor of Plaintiff, the factual allegations regarding the financing costs are sufficient to survive Defendant's Rule 12(b)(6) motion, the purpose of which "is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards*, 178 F.3d at 243–44.

### 3. Plaintiff's Claims for Breach of Warranties Are Not Dismissed

Defendants contend that Plaintiff's claims for breach of implied warranty of merchantability should be dismissed because Plaintiff has not set forth any viable claim for damages for breach of warranty. In Defendants' view, Plaintiff has only set out consequential damages and financing costs, and therefore has not asserted a claim for damages as a result of the alleged breach of warranty; absent a legitimate claim for damages, Plaintiffs have not asserted a viable legal cause of action. Plaintiff counters that consequential damages are available for breach of implied warranties under the facts of this case. As shown in the preceding sections regarding Plaintiff's claims for consequential damages and financing costs,

---

[8] Indeed, it is possible that, if Defendants fraudulently induced Plaintiff into contracting to buy the Equipment, then Defendants may be liable for the financing costs, regardless of whether there were additional costs incurred because of the Equipment's failure to perform as promised. The facts in this case have not been developed, but whether Defendants financed Plaintiff's purchase of the Equipment may be a relevant issue.

-16-

Case 6:08-cv-00023-NKM-mfu   Document 24   Filed 10/24/08   Page 16 of 18   Pageid#: 163

the factual allegations in Plaintiff's Complaint are sufficient for those claims to survive Defendants' Motion to Dismiss. Accordingly, the Court will deny the Motion to Dismiss Plaintiff's claims for breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose.

*4. Plaintiff's Claim for Punitive Damages Does Not Fail As a Matter of Law*

Count V of the Complaint asserts that Plaintiff is entitled to punitive damages. Defendants contend that "'punitive damages' is not a stand-alone cause of action." More relevant, Defendants further contend that Plaintiff's claims for breach of warranty sound in contract, not in tort, and that punitive damages are not available for breach of contract absent an independent tort. Accordingly, Defendants assert, punitive damages are not recoverable under Plaintiff's claims for breach of implied warranties.

In the first instance, it is true that "'punitive damages is not a stand-alone cause of action." However, the Court will not deny a form of requested relief simply because of poor formatting of the pleadings. Furthermore, punitive damages are available for breach of contract in the presence of an independent tort; as shown in the preceding sections of this opinion, Plaintiff has sufficiently pleaded fraud in the inducement.

> Under Virginia law, a tort claim normally cannot be maintained in conjunction with a breach of contract claim. An exception arises where a party establishes an independent, willful tort that is factually bound to the contractual breach but whose legal elements are distinct from it. It is not sufficient for plaintiff to show that defendant willfully desired to breach the contract for its own benefit. Instead, Plaintiff must show that defendant maliciously desired to injure plaintiff.

*Erdmann v. Preferred Research, Inc.*, 852 F.2d 788, 791 (4th Cir. 1988) (citations and quotations omitted). Thus, punitive damages are recoverable "where the breach amounts to an independent, willful tort." *Kamlar Corp. v. Haley*, 224 Va. 699, 705 (1983). As previously discussed,

-17-

Plaintiff has sufficiently alleged an injury and tort independent of a breach of contract claim, given that Plaintiff has sufficiently alleged fraud and fraudulent inducement, which suggest a duty "not . . . existing between the parties solely by virtue of contract."[9] *Foreign Mission Bd. of the Southern Baptist Convention v. Wade*, 242 Va. 234, 241 (1991). "[F]raud is an independent, willful tort under Virginia law." *Hewlette v. Hovis*, 318 F. Supp. 2d 332, 337 (E.D. Va. 2004) (citing *Goodstein v. Weinberg*, 219 Va. 105, 109 (1978); *Vanguard Military Equipment Corp. v. David B. Finestone Co., Inc.*, 6 F. Supp. 2d 488, 493 (E.D. Va. 1997)). Accordingly, Plaintiff's claim for punitive damages will not be dismissed.

## IV. CONCLUSION

For the heretofore stated reasons, Defendants' Motion to Dismiss (docket no. 3) will be denied.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 24th day of October, 2008.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[9] *See also* n. 3, *supra*.

-18-

Case 6:08-cv-00023-NKM-mfu Document 24 Filed 10/24/08 Page 18 of 18 Pageid#: 165